OPINION OF THE COURT
Angelo Graci, J.
This is an application brought by Mental Health Information Service on behalf of a patient at the Creedmoor Psychiatric Center to vacate a determination by the staff and director of that center and restrain further involuntary treatment with certain drugs.
The patient was admitted to the facility on December 19, 1983, under emergency provisions for observation, care and treatment. (Mental Hygiene Law, § 9.39.) Shortly thereafter, she was retained as an involuntary patient upon the certification of two physicians. (Mental Hygiene Law, § 9.27.) Her present status as an involuntary patient is pursuant to an order of retention, of this court. (Mental Hygiene Law, § 9.33.)
The physicians treating the patient determined that the use of a psychotropic drug was appropriate in her case. She has re *53 sisted the administration of the drug. Petitioner Mental Health Information Service was notified of the intention to compel administration and the procedures mandated by State regulation were followed. (14 NYCRR 27.8.) On June 7, 1984, the Regional Director of the Department of Mental Hygiene approved the involuntary use of-the drug.
The petitioner does not question that the patient is mentally ill or that her admission and the subsequent order of retention are valid. There is no dispute that the respondents complied with all of the appropriate agency regulations. Further, there appears no claim that the use of a psychotropic drug is an inappropriate form of treatment in this case.
The question raised here is whether any drug may be used over the patient’s objection. The nature of petitioner’s argument is unclear but rests either on the claim that the ..patient has an absolute right to refuse any drug administration or upon the assumption that the patient has additional rights to “due process” hearings not afforded by respondents.
There appears little doubt that a patient at a mental health facility has a “liberty interest” at stake when he is subjected to involuntary treatment with powerful and sometimes mind-altering drugs. (See Project Release v Prevost, 722 F2d 960, 979.) The “liberty interest” or right is protected both by State law and Federal Constitution. (Mental Hygiene Law, §§ 33.01, 33.03; 14 NYCRR 27.8; see Youngberg v Romeo, 437 US 307; see, also, Mills v Rogers, 457 US 291.)
The extent of this right or interest has been the subject of recent consideration by several Federal courts. (Project Release v Prevost, supra; Rennie v Klein, 653 F2d 836; Rogers v Okin, 634 F2d 650.) The court is aware that two of these decisions were vacated by the United States Supreme Court and remanded for further consideration. (Rennie v Klein, 653 F2d 836, vacated and remanded 458 US 1119, supra; Rogers v Okin, 634 F2d 650, vacated and remanded sub nom. Mills v Rogers, 457 US 291, supra.) The action by the United States Supreme Court was not caused by disagreement with the conclusions of the Circuit Courts. Rather, the question was whether State law provided a broader protected right than was afforded by the Constitution. In view of intervening decisions, the Circuit Courts were directed to consider such possible broader rights. (Mills v Rogers, supra, pp 302-306.) Despite these remands, the court finds that the rationale in the Circuit Court opinions is persuasive as to the issues present in this case.
*54 In furtherance of his “liberty interest”, a patient at a mental health facility may refuse administration of drugs absent an emergency situation or a finding that he is incapable of understanding the need for the treatment. (Rogers v Okin, supra, pp 654-658.) Thus, the right to refuse treatment is not absolute. (Rennie v Klein, supra, pp 844-845.) On the other hand, the patient cannot be compelled to accept medication upon the unilateral act of the treating physician. Under law of this State, he may question the treatment and appeal any determination through successive agency hearings. (Mental Hygiene Law, § 33.01; 14 NYCRR 27.8.) The constitutional underpinnings protecting a patient’s “liberty interest” require “due process” in reviewing the mode of treatment but do not require court review of every case if adequate professional review is provided. (See Rogers v Okin, supra, pp 659-661; Rennie v Klein, supra, p 848.) The procedures provided by the regulations in New York meet the constitutional demands for due process. (Project Release v Prevost, supra, pp 977-981.)
Although the petitioner did not raise any question with regard to the mode of treatment or the medical determinations made in this case, the court inquired into these questions. From the testimony of the physician at the respondent facility, the court finds that the medication here is a proper mode of treatment and that without it the patient’s condition would substantially deteriorate. As the question was not raised by petitioner, the court did not explore in depth the patient’s ability to understand the need for treatment. She was admitted to the facility and retained pursuant to an order of the court which required findings relative to such issues.
Not all admissions to mental health facilities require a finding that the patient does not understand the need for treatment. (See Youngberg v Romeo, supra, p 315; Rennie v Klein, supra, p 846.) Regardless of the basis for her admission, the patient here is presently being held pursuant to a court order of retention. The predicate for an order of retention as an involuntary patient is that the patient does not understand the need for such care and treatment. (Mental Health Law, § 9.01.) Such finding, made within recent time proximity to this case, provides a sufficient predicate to support the subsequent professional determinations to administer the medication without the consent of the patient. (See Rogers v Okin, supra, p 658.)
Accordingly, the petition is denied and dismissed. The court notes that the present retention order expires in September of this year. The patient’s continued treatment as an involuntary *55 patient must be reviewed at that time. If Mental Health Information Service believes that the patient might participate, in part, in the choice of treatment modality or medication, her ability to so participate should be raised at the time of that retention hearing. A more complete exploration of her retention and mode of treatment could be handled at that time.